## UNITED STATES v. MATHIE.

(District Court, S. D. California, S. D. June 28, 1921.)

No. 2774.

Intoxicating liquor ⚖=131—Intent not element of illegal sale.

In a prosecution under National Prohibition Act, tit. 2, § 29, against a retail dealer for selling as a beverage cider containing one-half of 1 per cent. or more of alcohol, it is not a defense that defendant bought and sold the cider as preserved sweet cider, and was ignorant that it contained more than the lawful percentage of alcohol which resulted from the ineffectiveness of the preservative used by the manufacturer.

Criminal prosecution by the United States against J. F. Mathie. Submitted on stipulated facts. Judgment of guilty.

Robert O'Connor, U. S. Atty., of Los Angeles, Cal., and H. L. Dickson, Asst. U. S. Atty., of Los Angeles, Cal.

Meiklejohn & Gahan, of Los Angeles, Cal., for defendant.

TRIPPET, District Judge. This is an information against the defendant for selling cider, containing more than one-half of 1 per centum of alcohol, as a beverage. The facts have been stipulated, and the de-

⚖=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

termination of whether or not the defendant is guilty depends upon the facts set forth in the stipulation as follows:

"That the cider sold by the defendant as in said information alleged was purchased by W. M. Ryan from the Ukipa Cider Company, 916 Mateo street, in the city of Los Angeles, state of California, for preserved sweet cider, but the preservative used by the manufacturer did not maintain an alcoholic content at less than one-half of 1 per centum, which content was unknown to defendant."

The defendant claims that the government must show that the defendant knew the cider contained alcohol in excess of one-half of 1 per cent. by volume. The government contends that it does not make any difference whether he knew it or not; if he sold it, he is guilty under the law.

The determination of this question depends upon the construction of title 2, §§ 4 and 5, of the Volstead Act (41 Stat. 305), which are as follows:

"Sec. 4. The articles enumerated in this section shall not after having been manufactured and prepared for the market, be subject to the provisions of this act if they correspond with the following descriptions and limitations, namely:

"(a) Denatured alcohol or denatured rum produced and used as provided by laws and regulations now or hereafter in force.

"(b) Medicinal preparations manufactured in accordance with formulas prescribed by the United States Pharmacopœia, National Formulary or the American Institute of Homeopathy that are unfit for use for beverage purposes.

"(c) Patented, patent, and proprietary medicines that are unfit for use for beverage purposes.

"(d) Toilet, medicinal, and antiseptic preparations and solutions that are unfit for use for beverage purposes.

"(e) Flavoring extracts and sirups that are unfit for use as a beverage, or for intoxicating beverage purposes.

"(f) Vinegar and preserved sweet cider.

"A person who manufactures any of the articles mentioned in this section may purchase and possess liquor for that purpose, but he shall secure permits to manufacture such articles and to purchase such liquor, give the bonds, keep the records, and make the reports specified in this Act and as directed by the commissioner. No such manufacturer shall sell, use, or dispose of any liquor otherwise than as an ingredient of the articles authorized to be manufactured therefrom. No more alcohol shall be used in the manufacture of any extract, sirup, or the articles named in paragraphs (b), (c), and (d), of this section which may be used for beverage purposes than the quantity necessary for extraction or solution of the elements contained therein and for the preservation of the article.

"Any person who shall knowingly sell any of the articles mentioned in paragraphs (a), (b), (c), and (d) of this section for beverage purposes, or any extract or sirup for intoxicating beverage purposes, or who shall sell any of the same under circumstances from which the seller might reasonably deduce the intention of the purchaser to use them for such purposes, *or shall sell any beverage containing one-half of one per centum or more of alcohol by volume in which any extract, sirup, or other article is used as an ingredient,* shall be subject to the penalties provided in section 29 of this title. If the commissioner shall find, after notice and hearing as provided for in section 5 of this title, that any person has sold any flavoring extract, sirup, or beverage in violation of this paragraph, he shall notify such person, and any known principal for whom the sale was made, to desist from selling such article; and it shall thereupon be unlawful for a period of one year thereafter for any person so notified to sell any such extract, sirup, or beverage without making

an application for, giving a bond, and obtaining a permit so to do, which permit may be issued upon such conditions as the commissioner may deem necessary to prevent such illegal sales, and in addition the commissioner shall require a record and report of sales.

"Sec. 5. Whenever the commissioner has reason to believe that any article mentioned in section 4 does not correspond with the descriptions and limitations therein provided, he shall cause an analysis of said article to be made, and if, upon such analysis, the commissioner shall find that said article does not so correspond, he shall give not less than fifteen days' notice in writing to the person who is the manufacturer thereof to show cause why said article should not be dealt with as an intoxicating liquor, such notice to be served personally or by registered mail, as the commissioner may determine, and shall specify the time when, the place where, and the name of the agent or official before whom such person is required to appear.

"If the manufacturer of said article fails to show to the satisfaction of the commissioner that the article corresponds to the descriptions and limitations provided in section 4 of this title, his permit to manufacture and sell such article shall be revoked. The manufacturer may by appropriate proceeding in a court of equity have the action of the commissioner reviewed, and the court may affirm, modify, or reverse the finding of the commissioner as the facts and law of the case may warrant, and during the pendency of such proceedings may restrain the manufacture, sale, or other disposition of such article."

And again the contentions of the parties depend upon the construction of the last paragraph of section 4, and particularly the words in said paragraph, as follows: Any person who shall—

" * * * sell any beverage containing one half of one per centum or more of alcohol by volume in which any extract, sirup, or other article is used as an ingredient, shall be subject to the penalties provided in section 29 of this title."

The government contends that the phrase referred to here applies to subdivision (e) of section 4, which is as follows:

"Flavoring extracts and sirups that are unfit for use as a beverage, or for intoxicating beverage purposes"

—and claims that the phrase under discussion does not refer at all to subdivision (f) in section 4, relating to preserved sweet cider. It is plain to me that the phrase under consideration does not refer to preserved sweet cider. There is no extract, sirup or other article used as an ingredient in sweet cider. The language used here would indicate that the beverage referred to was a compound of some kind in which there was more than one article. Cider is a substance in itself. It is true that preserved sweet cider under the regulations may contain benzoate of soda, but I am of the opinion that when benzoate of soda is used it is not regarded as an ingredient of the sweet cider. This argument is borne out by subdivision (c) of section 94 of the regulations, which refers particularly to flavoring extracts and sirups, etc. The department has evidently construed in these regulations the phrase under discussion to refer to subdivision (e) and not to subdivision (f) of section 4.

Article V of the regulations relates to the manufacture and sale of cider and vinegar. Section 36 thereof is as follows:

"Sweet cider containing less than one-half of 1 per cent. of alcohol by volume may be manufactured and sold without the necessity of obtaining permit, provided such product is put up and marketed in sterile closed containers

or is treated by the addition of benzoate of soda, or other substance which will prevent fermentation, in such proportion as to insure the alcoholic content remaining below one-half of 1 per cent. of alcohol by volume. The responsibility for keeping the alcoholic content below such percentage rests upon the manufacturer, and in any case where cider is found upon the market containing alcohol in excess of the allowed percentage the manufacturer will be presumed to have manufactured and sold an intoxicating liquor."

It will be noticed that this section 36 of article V of the regulations relates to—

"sweet cider containing less than one-half of 1 per cent. of alcohol."

It does not give permission to sell any other kind of cider. It is true that this regulation says that the responsibility for keeping the alcoholic content below such percentage rests upon the manufacturer, and the manufacturer undoubtedly would be responsible, but his responsibility would not excuse the retailer. They would both be guilty of violating the law. Section 36 of the regulations relates wholly to the manufacture and sale of sweet cider, and does not relate to the manufacture and sale of cider containing more than one-half of 1 per cent. of alcohol.

Section 37 of article V of the regulations contains the following:

"Cider containing less than one-half of 1 per cent. of alcohol by volume may be sold by the producer to persons holding permits to manufacture vinegar. If such cider, however, contains one-half of 1 per cent. or more of alcohol by volume when removed for conversion into vinegar, it will be necessary that the persons producing same hold permits to manufacture cider as above provided and furnish same only upon receipt of permits to purchase."

It will be seen that section 37 of article V of the regulations deals only with cider containing less than one-half of 1 per cent. of alcohol, except where the cider is sold by permit to persons holding permits to manufacture vinegar. I cannot see where the regulations in any way assist the defendant in this case.

The phrase in section 4, above quoted, upon which the defendant relies, does not sustain the argument of the defendant. The first phrase of the pargaraph, which relates to subdivisions (a), (b), (c), and (d), reads as follows:

"Any person who shall knowingly sell," etc., " * * * or shall sell any of the same under circumstances from which the seller might reasonably deduce the intention of the purchaser to use them for such purposes."

It will be seen that there the act uses the word "knowingly" as to subdivisions (a), (b), (c), and (d), and then has a phrase concerning circumstances which may put one upon inquiry. The phrase under discussion does not use the word "knowingly," or any other language tending to indicate that he must have any information that will lead him to make inquiry. The sentence read by itself shows upon its face that the defendant's contentions are erroneous. The word "knowingly" in the last paragraph of section 4, title 2, of the act, under discussion is limited to subdivisions (a), (b), (c), and (d), and does not in any sense refer to subdivision (e) or (f) of section 4.

Section 3, title 2, of the act provides:

"All the provisions of this act shall be liberally construed, to the end that the use of intoxicating liquor as a beverage may be prevented."

If the contentions of the defendant were maintained, the effect would be that a man who sold cider containing more than one-half of 1 per cent. of alcohol would not be guilty of violating the law, unless he were notified prior to the sale that the cider contained more than one-half of 1 per cent. of alcohol. The defendant contends that, since he bought this cider from one who was manufacturing cider in accordance with section 36 of article V of the regulations, and bought it for preserved sweet cider, the only remedy the government has is that prescribed by section 5 of the act, namely, notice, hearing, etc., and that the defendant cannot be convicted of a crime under the circumstances.

Let us see how this would work out. On Monday an agent of the government calls upon a retail dealer and gets a sample of his cider, analyzes it, and finds that it contains more than one-half of 1 per cent. of alcohol by volume. The next day he goes and notifies the retail dealer that the sample he took was not sweet cider and for him to cease selling it. The retail dealer would say:

"Why, I sold that barrel, and now have a different barrel; take a sample of that, and see if it has too much alcohol in it."

The third day the officer comes back and notifies him that that barrel is wrong, and the retail dealer says:

"Well, I have sold out that barrel, too, and have another barrel now, which purports to be preserved sweet cider; analyze that."

How could a conviction ever be secured against persons selling cider containing more than one-half of 1 per cent. of alcohol for beverage purposes, if the contentions of the defendant were sustained? Would not the defendant each time come forward and say:

"I bought this for preserved sweet cider. I did not analyze it. I took it for granted that it contained less than one-half of 1 per cent. of alcohol, because I bought it from a manufacturer who makes preserved sweet cider. Upon being notified that I had sold cider in violation of the law, I did not sell any more of that particular lot. I immediately got another barrel from another manufacturer, who makes preserved sweet cider, and have been selling out of that"

—and so on, and so on, ad infinitum? Would this be construing the act in such a manner as to prevent the sale of intoxicating liquor? Would not such a construction of the act be a license to a man to continue to sell cider containing more than the required alcoholic content?

The only remedy, according to the defendant, would be for the government to stop the manufacture of such article. But the answer to that argument is that one day this retail dealer would get a barrel of cider from one manufacturer, the next day from another, and so on. The manufacturer would claim that, when he delivered the barrel of cider to the retail dealer, it contained no more than the requisite amount of alcohol, and that if, when the retail dealer sold it, it contained more, the retail dealer must have done something to it; that is to say, the manufacturer would claim that the retail dealer had put sugar, raisins, or something else in it to cause it to ferment and destroy the preservative. The construction contended for by the defendant would be inconsistent with the rule laid down in the act for its interpretation.

It is therefore my opinion that any person who sells cider as a beverage does so at his peril. He must know that he is not violating the law. He must know that the cider contains less than one-half of 1 per cent. of alcohol by volume. This is the only way the act could be enforced against persons selling cider containing more than one-half of 1 per cent. of alcohol by volume.

Under the stipulated facts, the defendant is guilty.